IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MICHAEL J.G. SAUNDERS,　　　　　)
　　　　　　　　　　　　　　　　　)
　　　Plaintiff,　　　　　　　　　)
v.　　　　　　　　　　　　　　　　)　　Civil Action No. 3:09CV815–HEH
　　　　　　　　　　　　　　　　　)
R. SMITH, *et al.*,　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　Defendants.　　　　　　　　)

## MEMORANDUM OPINION
(Granting Defendants' Motion for Summary Judgment)

Plaintiff Michael J.G. Saunders, a former Virginia inmate proceeding *pro se* and *in forma pauperis*, brings this 42 U.S.C. § 1983 action. Defendants have moved for summary judgment.[1] Although Defendants provided Saunders with the appropriate *Roseboro* notice,[2] Saunders has not responded. The matter is ripe for disposition.

### I. Procedural History

In his Second Amended Complaint, Saunders raises the following claims:

Claim 1(a)　Lt. Sanders and Capt. Mack violated Saunders's rights under the Eighth Amendment when they denied him a toothbrush and adequate dental care.

Claim 1(b)　Ms. Quick, Nurse Mastrovito, and Ms. Cyriax violated Saunders's rights under the Eighth Amendment when they denied Saunders's

---

[1] The following individuals moved for summary judgment: Lieutenant William Sanders ("Lt. Sanders"); Captain Frank Mack, III ("Capt. Mack"); Sergeant Valerie T. Sumpter McAfee ("Sgt. Sumpter"); Sharyn L. Quick ("Ms. Quick"); Nurse Juanita Mastrovito Baker ("Nurse Mastrovito"); Donna R. Cyriax ("Ms. Cyriax"); Raymond G. Smith, DDS ("Dr. Smith"); and Officer Ronald D. Long ("Ofc. Long") (hereinafter collectively "Defendants"). The Court employs the spelling of Nurse Mastrovito's name as it appears in her affidavit.

[2] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

|  |  |
|---|---|
|  | grievance wherein he complained about not receiving adequate dental care. |
| Claim 1(c) | Dr. Smith violated Saunders's rights under the Eighth Amendment when he failed to treat Saunders's painful oral infection because Saunders was indigent. |
| Claim 2(a) | Ofc. Long and Sgt. Sumpter violated Saunders's rights under the Eighth Amendment when they housed Saunders in a suicide cell. |
| Claim 2(b) | Ofc. Long and Sgt. Sumpter violated Saunders's right under the Eighth Amendment by subjecting him to verbal harassment. |
| Claim 2(c) | Capt. Mack and Lt. Sanders are liable for the actions of Ofc. Long and Sgt. Sumpter because they "knowingly allowed" (2d Am. Compl. ¶ 14)[3] or "knowingly supervised" (*id.* ¶ 15) Sgt. Sumpter's and Lt. Long's detention of Saunders in a suicide cell. |
| Claim 3 | Sergeant Harrison is liable for "all of the constitutional violations aforesaid" because "Harrison refused [Saunders] any access to the [the Jail's] institutional grievance procedure." (*Id.* ¶ 19.) |

By Memorandum Opinion and Order entered on July 13, 2011, the Court: dismissed as moot Saunders's claims for declaratory and injunctive relief; dismissed without prejudice Saunders's official capacity claims; dismissed Claim 1(a) without prejudice; dismissed without prejudice claims for compensatory damages with respect to Claims 2(a) and 2(c); and dismissed Claims 2(b) and 3 with prejudice. *See Saunders v. Smith*, No. 3:09CV815–HEH, 2011 WL 2791080, at *3–5 (E.D. Va. July 13, 2011).

---

[3] The Court has corrected the capitalization in the quotations to Saunders's Second Amended Complaint.

2

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the responsibility of the party seeking summary judgment to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted).

When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)). In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Nevertheless, the nonmoving party cannot "create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

3

Defendants supported the Motion for Summary Judgment with affidavits and business records from the Riverside Regional Jail ("RRJ"). Additionally, Defendants' Motion for Summary Judgment contains a statement of undisputed facts as required by Local Rule 56(B).[4] Because Saunders has not responded to the Motion for Summary Judgment, the Court generally assumes that the facts listed in the statement of undisputed material facts (Br. Supp. Mot. Summ. J. 2–11) are admitted. E.D. Va. Loc. Civ. R. 56(B).[5]

---

[4] Local Rule 56(B) provides:

> Each brief in support of a motion for summary judgment shall include a specifically captioned section listing all material facts as to which the moving party contends there is no genuine issue and citing the parts of the record relied on to support the listed facts as alleged to be undisputed. A brief in response to such a motion shall include a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute. In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.

E.D. Va. Loc. Civ. R. 56(B).

[5] Saunders's Second Amended Complaint is verified under penalty of perjury. Nevertheless, the facts offered by an affidavit or a sworn statement must be in the form of admissible evidence. *See* Fed. R. Civ. P. 56(c)(4). In this regard, the statement in the affidavit or sworn declaration "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." (*Id.*) Moreover, "summary judgment affidavits cannot be conclusory or based upon hearsay." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (internal citation omitted) (citing *Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 975 (4th Cir. 1990); *Md. Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1252 (4th Cir. 1991)). The vast majority of Saunders's statements in his Second Amended Complaint run afoul of these prohibitions. (*See, e.g.*, 2d Am. Compl. ¶¶ 15, 16.) Nevertheless, no need exists to catalog the entirety of inadmissible evidence previously submitted by Saunders because he failed to cite the Court to any evidence, such as the Second Amended Complaint, that he wished the Court to consider in opposition to the Motion

In light of the foregoing principles and submissions, the following facts are established for purposes of the Motion for Summary Judgment.

### III. SUMMARY OF PERTINENT FACTS

**A.  Saunders's Initial Periods of Incarceration in the RRJ**

Saunders was periodically detained at the RRJ from September 20, 2007 until February 24, 2010. Between January 11, 2009 and January 20, 2009, Saunders submitted three Inmate Medical Request Forms ("Request Forms") wherein he complained of a foul smelling and painful infection in his mouth and requested medication.

On February 9, 2009, Dr. Smith examined Saunders. Dr. Smith determined that Saunders had an impacted tooth #11 with partial exposure and gingival inflammation of tooth #22. (Defs.' Br. Supp. Mot. Summ. J. Ex. H ("Smith Aff.") ¶ 9.) Dr. Smith provided Saunders with oral hygiene instruction regarding tooth #22. (*Id.*) Dr. Smith noted that Saunders was scheduled to be released within the next thirty (30) days. (*Id.*) Dr. Smith concluded that tooth #22 did not require immediate treatment and recommended that Saunders have tooth #11 extracted upon release from jail. (*Id.*)

On March 3, 2009, Saunders was released from RRJ, but reentered shortly thereafter on June 2, 2009. During the period of his release, Saunders did not have tooth #11 extracted. On June 11, 2009, Saunders refused to cooperate with his fifteen-day medical evaluation. On June 25, 2009, medical staff conducted another fifteen-day

---

for Summary Judgment. *See* Fed. R. Civ. P. 56(c)(3) (emphasizing that "[t]he court need consider only the cited materials" in deciding a motion for summary judgment).

5

medical evaluation during which Saunders did not voice any concerns. On August 4, 2009, Saunders left the RRJ.

## B. Saunders Final Period of Incarceration in the RRJ

On August 25, 2009, Saunders returned to the RRJ. On September 17, 2009, Saunders refused to cooperate during his fifteen-day medical assessment.

### 1. Saunders's Placement in Segregated Custody

On September 23, 2009, Saunders had an altercation with another inmate. As a result of that altercation, RRJ officials placed Saunders in Cell 5 in housing unit 5/Charlie. "Unit 5/Charlie is a segregated maximum custody unit which houses inmates with behavioral and disciplinary problems." (Defs.' Br. Supp. Mot. Summ. J. Ex. B ("Mack Aff.") ¶ 4.) "As a result of ongoing disciplinary and behavioral incidents,[6] Mr. Saunders was at times housed in unit 5/Charlie, including the period from September 23, 2009 to October 23, 2009." (*Id.* ¶ 5.)

> Cell 5 in housing unit 5/Charlie does not include a table, towel hooks, stool, or a bunk, but does include a device that rises off the floor on which a mattress is placed. It also has different flooring from other cells. The modifications are intended to assure that a prisoner could not harm himself in the cell. Other than these special modifications, Cell 5 is not lacking any amenities found in all cells in 5/Charlie, including a sink, toilet, and mattress. It is used as any other cell in 5/Charlie is used.
>
> At all times that Mr. Saunders was housed in housing unit 5/Charlie, his cell had a window with unobstructed access to natural light.[7]

---

[6] For example, on September 24, 2009, while receiving his meal tray, Saunders threatened to urinate on Ofc. Long.

[7] Saunders contends that his cell his was "devoid of any amenities [including] light" during this period. (2nd Am. Compl. ¶ 16.) Comments of this ilk do not create material disputes

> All cells in unit 5/Charlie, including any cell Mr. Saunders was housed in, also includes an overhead light, and a dimmer light.

(*Id.* ¶¶ 8–10 (paragraph numbers omitted).)[8] Furthermore, "[w]hile in Unit 5/Charlie, inmates are not issued regular toothbrushes due to the security concern that one could be fashioned into a weapon. They are instead given finger brushes." (*Id.* ¶ 6.)

### 2. Saunders's Renewed Dental Complaints

On October 1, 2009, Saunders refused to be evaluated for his fifteen-day medical assessment. On October 8, 2009, Saunders filed a grievance requesting, *inter alia*, a proper tooth brush and permission to see the dentist. Ms. Quick responded to the grievance form and informed Saunders he would be placed on the list to see the dentist. Over the next few weeks, Saunders filed various complaints and grievances regarding his dental care.

On October 28, 2009, Dr. Smith treated Saunders for complaints of pain and soreness around impacted tooth #11. Dr. Smith explains:

> An impacted tooth with partial exposure is a tooth that fails to emerge (erupt), or only partially emerges, is considered to be impacted. They are often painless and cause no apparent trouble. A partially emerged tooth (impacted) may trap food, plaque and other debris around it and if not maintained by good oral hygiene may lead to inflammation and tenderness of tissue around the tooth and unpleasant mouth odor.

---

of fact. *See United States v. Roane*, 378 F.3d 382, 400–01 (4th Cir. 2004) (observing "[a]iry generalities" cannot "stave off summary judgment") (alteration in original; internal quotation marks omitted).

[8] Capt. Mack denies knowledge of any problems with the lighting in Saunders's cell or any other problems with Saunders's cell. (Mack. Aff. ¶ 11.)

> Gingival inflammation [is] a localized protective reaction of tissue to irritation, injury, or infection characterized by discomfort and or swelling.

(Smith Aff. ¶¶ 13–14.) Although the tissue around "tooth #11 was tender . . . there was no evidence of infection or drainage." (*Id.* ¶ 16.) Dr. Smith also maintains that "[a]ny potential surgery or procedure for the treatment of impacted tooth #11 was entirely elective in nature. It was not necessary for the treatment of Mr. Saunders' dental needs to have any surgery or procedure done while incarcerated at the Riverside Regional Jail." (*Id.* ¶ 12.)

"Saunders complained that the Maximum Custody Unit requires him to use a finger brush. [Dr. Smith] explained to Mr. Saunders that he would need to use what was provided until released from Maximum Custody." (*Id.* ¶ 17.) According to Dr. Smith, "[i]f used properly, a finger brush would be adequate for Mr. Saunders' dental needs." (*Id.* ¶ 18.) Nevertheless, at some point, Capt. Mack "approved and provided [Saunders] with a special modified brush in an effort to respond to Mr. Saunders' complaints regarding his dental needs while adhering to security considerations." (Mack Aff. ¶ 7.)

Dr. Smith further explained to Saunders "his options for treatment of his impacted tooth #11 as being removal by an oral surgeon at his own expense, or, once released, a bracket could be placed on tooth #11 to pull the tooth into occlusion." (Smith Aff. ¶ 19.) "Saunders did not choose to arrange to have the elective surgery done at his own expense." (*Id.* ¶ 21.) Additionally, during the October 28, 2009 examination, Dr. Smith asked Saunders whether he needed pain medication. In response, Saunders did not

8

request any pain medication and Dr. Smith recommended Saunders brush his teeth and rinse his mouth with warm water. (*Id.* at ¶¶ 23, 24.)

After refusing to cooperate with his fifteen-day medical assessment scheduled to begin on November 12, 2009, Saunders submitted a request form on November 25, 2009 wherein he stated that he needed to see the dentist for an oral infection. Saunders also complained of bleeding gums when brushing his teeth. (*Id.* at ¶ 25).

On December 8, 2009, Dr. Smith examined Saunders for bleeding gums and "noted a fair amount of plaque along gingival margins of tooth #s 4, 5 and 6. [Saunders] also had generalized plaque along gingival areas and facial aspect of most teeth present." (Smith Aff. ¶ 25.)[9] Dr. Smith also stated:

> Bleeding gums are a common result of poor oral hygiene.
>
> Mr. Saunders had access to approved Maximum Custody oral hygiene tools, but due to plaque build-up, did not appear to be using it at all.
>
> [Dr. Smith] explained the importance of using the finger brush to remove the plaque deposits to decrease the bleeding of his gums during the 12/8/09 appointment.

(*Id.* ¶¶ 28–29 (paragraph numbers omitted).)

Over the next three months, Saunders continued to file requests and grievances complaining about his teeth. Saunders also continued to act disruptively. On February 24, 2010, Saunders left the RRJ for the Virginia Department of Corrections.

---

[9] "The gingival margin is the border of the tissue (gums) surrounding, but not attached to the teeth." (Smith Aff. ¶ 26.)

9

## IV. ANALYSIS

The Eighth Amendment expressly prohibits the imposition of excessive fines or bails and the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996); *see Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (noting that the Eighth Amendment protects against "deprivations" that are "suffered during imprisonment"); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (holding that "deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment). To survive summary judgment with respect to "an Eighth Amendment 'cruel and unusual punishment' claim, a prisoner must prove two elements: (1) that objectively the deprivation suffered or harm inflicted was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson*, 501 U.S. at 298).

To satisfy the objective element of an Eighth Amendment claim, the deprivation complained of must be extreme and amount to more than the "'routine discomfort [that] is part of the penalty that criminal offenders pay for their offenses against society.'" *Strickler v. Waters*, 989 F.2d 1375, 1380 n.3 (4th Cir. 1993) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). Thus, Saunders "'must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions.'"

10

*Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997) (quoting *Strickler*, 989 F.2d at 1381).

Under the subjective prong, the inmate must demonstrate that the defendant was deliberately indifferent to his serious medical needs. *See Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001). Deliberate indifference requires a plaintiff to introduce evidence from which the finder of fact could conclude that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his [or her] actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997)).

### A. Alleged Denial of Adequate Dental Care Claims 1(a)–(c)

In cases of inadequate medical attention, a prisoner satisfies the objective component by proving a serious medical condition. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson*, 503 U.S. at 9; *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995). "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.'" *Coppage v. Mann*, 906 F. Supp. 1025,

1037 (E.D. Va. 1995) (quoting *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987); *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980)).

In the immediate case, Saunders has not directed the Court to any admissible evidence from which a reasonable finder of fact could conclude that Saunders's dental problems – impacted tooth #11 or gingival inflammation of tooth #22 – constituted a serious medical need. *Id.* Rather, the evidence reflects that impacted tooth #11 did not require immediate medical attention and the finger brush provided by RRJ officials adequately addressed Saunders's gingival inflammation.[10] Accordingly, Claims 1(a)–(c) will be dismissed.

B.   **Confinement in Cell**

In Claims 2(a) and 2(c), Saunders contends Ofc. Long, Sgt. Sumpter, and Capt. Mack violated his rights by confining him in a suicide cell. Saunders, however, has failed to establish that his confinement in Cell 5 of Unit 5/Charlie amounted to a serious deprivation of light or any other basic human need. *See Strickler*, 989 F.2d at 1379–81. Accordingly, Claims 2(a) and 2(c) will be dismissed.

---

[10] Saunders also has not established that any of the defendants named in conjunction with Claim 1 acted with deliberate indifference. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) ("Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970))); *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990) (observing non-medical officials may generally rely upon the expertise of medical professionals).

12

## V. CONCLUSION

Defendants' Motion for Summary Judgment will be granted. The action will be dismissed.

An appropriate Order will accompany this Memorandum Opinion.

Date: July 2, 2012
Richmond, Virginia

/s/
HENRY E. HUDSON
UNITED STATES DISTRICT JUDGE